## LOUIS J. DOYLE *vs.* MARK A. HEATH.

PROVIDENCE—SEPTEMBER 22, 1900.

PRESENT : Stiness, C. J., Tillinghast and Blodgett, JJ.

(1) *Fraudulent Conveyances. United States Bankruptcy Law.*

Section 67, clause (f) of the United States bankruptcy law of 1898, applies as well to cases of voluntary as to those of involuntary bankruptcy.

(2) *Bankruptcy. Liens. Judgments.*

The language of the section, "all judgments . . . shall be deemed null and void," is limited by the context to the lien or preference created by such judgments and will not be construed to include the judgments themselves.

(3) *Bankrupt. Avoidance of Fraudulent Transfers.*

The trustee of a bankrupt acquires the power to avoid fraudulent conveyances by the bankrupt by virtue of section 70 clause (e) of the bankrupt law, which subrogates him only to the rights of the creditors, and not by virtue of any provision of the law which vests him with the property or rights of action of the bankrupt. Hence, as to a fraudulent conveyance made more than four months prior to the filing of the petition in bankruptcy (which is not within section 67 (e) of the bankruptcy law), the right of creditors to avoid must rest upon the statutes of the State.

(4) *Lien. Equitable Assets. Creditor's Bill.*

A creditor's lien on equitable assets dates from the filing of the bill. Affirming *Smith* v. *Millett*, 12 R. I. 59.

(5) *Creditor's Bill. Equitable Assets. United States Bankruptcy Law. Judgments. Liens.*

December 15, 1899, D., a judgment creditor of H., filed a bill to set aside a transfer of stock theretofore conveyed by H., as a fraud upon the rights of D. May 15, 1900, a decree was entered declaring the transfer void as

to D. and ordering a sale of the stock by a master. May 29, 1900, H.
filed his voluntary petition in bankruptcy. The trustee of the bankrupt
H. intervened and claimed the stock as a part of the bankrupt estate,
free from any lien in favor of D., by virtue of section 67 (f) of the United
States bankruptcy law of 1898 :—

*Held,* that the decree determined that D. was entitled to a lien as of the
date of the filing of the bill, more than four months prior to the filing of
the petition in bankruptcy.

BILL IN EQUITY to establish a lien on certain stock con-
veyed by the respondent to his wife in fraud of the rights of
the complainant, a judgment creditor. The facts are fully
stated in the opinion. The case came before the court upon
complainant's motion to dissolve an injunction theretofore
granted restraining the master from selling the stock under
a decree of the court previously entered. Heard on motion
to dissolve injunction, and injunction dissolved.

BLODGETT, J. On December 15, 1899, the complainant
Doyle, a judgment creditor of the respondent Heath, filed in
this court a creditor's bill to set aside a transfer of 1,300
shares of the capital stock of the American Cotton Bale Com-
pany, theretofore executed by Heath to his wife, as a fraud
upon the rights of the complainant, and to secure an equita-
ble lien thereon, and the respondent was duly served with
process on the following day. On May 15, 1900, after a
trial upon the merits, a decree was entered declaring that the
transfer was void as to Doyle, appointing a master to take a
transfer of the stock and directing the master to sell the
same at public auction for the benefit of the complainant.
The shares were duly transferred to the master, who adver-
tised the same to be sold on May 29, 1900. On the latter
day Heath filed his voluntary petition in bankruptcy in the
United States District Court for this district, and on the
same day an *ex parte* injunction was granted by this court
restraining the master from selling the stock in question until
further order. On July 21, 1900, one Arthur P. Johnson,
having been duly appointed trustee in bankruptcy of Heath,
was permitted by a decree of this court of that date to inter-
vene in this cause.

The case comes now before the court upon the motion of the complainant to dissolve the injunction against the sale by the master, and this motion is opposed on behalf of the trustee, who claims that the stock should be delivered to him as a part of the bankrupt estate, free from any lien in favor of the complainant. In support of his contention the trustee in bankruptcy urges that the adjudication in bankruptcy on May 29, 1900, annulled and discharged the lien heretofore declared in favor of the complainant by the decree entered on May 15, 1900. The complainant contends that the decree of that date determined that a lien in his favor existed at the time of the filing of his bill on December 15, 1899, more than four months prior to the date of the filing of the petition in bankruptcy by Heath.

So that the first question presented for our consideration is the effect of an adjudication of bankruptcy upon a decree entered within four months of the filing of the petition in bankruptcy, and establishing an equitable lien upon the shares of stock in favor of the complainant. And the decision of this question depends in large measure upon the construction to be given to the following section of the bankrupt act of 1898, viz. :

Section 67 (f): "That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate ; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect : *provided*, that nothing herein contained shall have the effect

to destroy or impair the title obtained by such levy, judgment, attachment or other lien, of a *bona fide* purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

(1)     Literally construed, section 67 (f) avoids "*all judgments*" obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy *against* him, and cases are not wanting which hold that such judgments are avoided only in cases of involuntary bankruptcy. See *In re De Lue*, 1 Am. Bank. Rep. 387 ; *In re Early, Ib.* 315 ; *In re Collins*, 2 *Ib.* 1.

But section 1 of the act, clause 1, in defining the terms used in the act, provides that "A person against whom a petition has been filed shall include a person who has filed a voluntary petition ;" and we think the weight of authority is in favor of the view that this section applies as well to cases of voluntary bankruptcy as to those of involuntary bankruptcy. See *In re Richards*, 2 N. B. N. 38 ; *In re Vaughn*, 2 *Ib.* 101 ; *In re Higgins*, 2 *Ib.* 115 ; *In re Rhoads*, 2 *Ib.* 301 ; *In re Spacht*, 2 *Ib.* 238 ; *In re Lesser*, 2 *Ib.* 599 ; *Peck v. Mitchell*, 1 N. B. N. 262.

(2)     Literally construed again, section 67 (f) avoids "*all judgments*" against a bankrupt rendered within four months of the filing of the petition, irrespective of the time of the institution of the suit in which the judgment was rendered ; and all such judgments are avoided, although no lien or preference was created thereby, for the language is without limitation or exception.

But the difficulty and unreasonableness of adopting a literal construction of the words "all judgments" appear upon considering the effect produced upon other sections of the act and upon other provisions of the United States statutes concerning judgments. In the first place, the words are found in the act under the sub-title "Liens," and they are conjoined with "levies, attachments or other liens."

Again, under section 63 (a) of the act, the debts which may be proved against a bankrupt are defined as includ-

ing "(1) a fixed liability, as evidenced by a *judgment* or an instrument in writing, absolutely owing at the time of the filing of the petition against him," and this without restriction as to the date of entry of the judgment.   And section 63 (5) also includes debts "founded upon provable debts reduced to *judgment after* the filing of the petition."   Under section 17, among debts not affected by a discharge are "(2) *judgments* in actions for frauds or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another"—a manifest inconsistency if the words "*all judgments*" are to be taken literally.

Again, section 905 of the Revised Statutes of the United States provides that "the records and judicial proceedings of the courts of any state or territory, when duly authenticated as therein specified, shall have such faith and credit given to them in every court in the United States as they have by law or usage in the courts of the state from which they are taken."   And it is hardly to be supposed that this general provision of federal legislation, first substantially enacted in 1790, was intended to be repealed by the single addition of the word "judgments" in this clause of the bankrupt act of 1898.   And if the words "all judgments" are to be literally construed, they must include judgments rendered in the courts of foreign countries, irrespective of treaty stipulations, and even the judgments of the very court in which the estate of the bankrupt is being administered.

We decline to adopt such a construction of the language of the act, and we construe the words "all judgments" to be qualified and defined by their context and to be limited to the lien or preference created by such a judgment.   Such a construction seems to us to be in exact accord with the spirit and scope of the act in general, as well as of section 67—that no preference should be created within a specified time of filing the petition in bankruptcy.   Indeed, in many States, though not in Rhode Island, a judgment is a lien from the date of its entry ; and thus no violence is done to the language of the act when it is said that the words "all judgments" as

used in this section are equivalent to the stricter and more accurate term of "all judgment-liens." And this construction is supported by the further language of the section, which, after providing for the avoidance and nullification, continues by saying: "And the *property* affected by the levy, *judgment*, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt," etc. *In re Kavanaugh*, 3 Am. Bank. Rep. 832, the court says, in speaking of section 67 (f), "This does indeed make certain liens and judgments void if obtained within four months of the adjudication, but it appears to us to be evident that the language, properly construed, was intended only to apply to such judgments as of themselves created liens. Liens thus created were intended to be overthrown and made ineffectual by the adjudication in bankruptcy unless preserved for the benefit of the estate."

(3)    Section 70 (a) of the bankrupt act provides that the trustee in bankruptcy shall "be vested by operation of law with the title of the *bankrupt* as of the date he was adjudged a bankrupt" (in this case the 29th day of May, A. D. 1900) as to "(4) property transferred by him in fraud of his creditors." And clause (e) of the same section provides that "The trustee may avoid any transfer by the bankrupt of his property which any creditor might have avoided, and may recover the property so transferred or its value from the person to whom it was transferred, unless he was a *bona fide* holder for value prior to the date of the adjudication."

It will be seen that the trustee does not acquire any power to recover the stock through any provision of the bankrupt act which vests him with the property or rights of action of Heath, but through a provision which subrogates him to the rights of the creditors of Heath and to those rights only; and which confers upon him the right of action which any such creditor may have to avoid the transfer of this stock.

Section 67 (e) of the act avoids certain fraudulent conveyances by the bankrupt, made within the four months' period, but gives no right of action to a creditor to avoid the same;

and as to a fraudulent conveyance made more than four months prior to the filing of the petition in bankruptcy, it is evident that, as in the case at bar, the right of the creditor to avoid and annul such a transfer must rest elsewhere than upon the bankrupt act, and of necessity upon the statute of this State. Being thus subrogated to such a creditor's right of action, the trustee's right of action to avoid a fraudulent conveyance is by derivation from a creditor and not by derivation from Heath.

(4)    In *Smith* v. *Millett*, 12 R. I. 59, which was the case of a creditor's bill filed to establish a lien on equitable assets, this court decided that "the better doctrine as to the priority of lien is the one stated by Chancellor Walworth in *Edmeston* v. *Lyde*, 1 Pai. 637, that the lien on the equitable assets dates from the filing of the bill." The same doctrine is sustained by the Supreme Court of the United States in *Miller* v. *Sherry*, 2 Wallace 237.

In *Taylor* v. *Taylor*, 45 Atl. Rep. 440, decided in February of the present year, the Court of Chancery of New Jersey says, in a similar case: "Now the complainant in this case had, at the date of the institution of the proceedings in bankruptcy, a lien upon the equitable property of the bankrupt— a lien which arose by the commencement of this suit more than four months before the bankrupt proceedings were begun. As a general rule an equitable lien is acquired by the filing of a creditor's bill or a bill in the nature of a creditor's bill upon the chose in action and equitable assets of the judgment debtor. It is entirely settled that a trustee or assignee in bankruptcy takes the property subject to all equitable liens."

(5)    We are of the opinion, therefore, that the decree of May 15, 1900, though entered within four months of the filing of the petition in bankruptcy by Heath, was not avoided by the adjudication in bankruptcy, inasmuch as such decree did not then create a lien in favor of the complainant but determined that Doyle was entitled to an equitable lien on the stock at the time of the filing of his bill on December 15,

1899, and more than four months prior to the filing of the petition in bankruptcy by Heath.

The injunction against the sale by the master must therefore be dissolved.

Injunction dissolved.

*Irving Champlin*, for complainant.

*Oscar Lapham*, for intervening trustee.