In re Salvatore G. SUPPA and Albina M. Suppa, Debtors.

Salvatore G. SUPPA and Albina M. Suppa, Plaintiffs,

v.

Frank J. CAPALBO and Josephine Capalbo, Washington Trust Company et als, Defendants.

Bankruptcy No. 80–00054.
Adv. No. 80–0123.

United States Bankruptcy Court, D. Rhode Island.

Feb. 20, 1981.

Frederick A. Costello, Warwick, R. I., for Debtors.

Avram N. Cohen, Providence, R. I., Trustee.

William Corcoran, Newport, R. I., for Savings Bank of Newport.

Edward Newman, Westerly, R. I., for Frank and Josephine Capalbo.

John P. Toscano, Jr., Westerly, R. I., for George Green.

Thomas Eyles, Pawcatuck, Conn., for Washington Trust Co.

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the complaint of the plaintiff-debtors to avoid certain liens and to assert a $15,800 exemption in the proceeds of the sale of their real estate.

The facts in this case are not in dispute and can be summarized as follows. On January 22, 1980, Salvatore and Albina Suppa filed voluntary bankruptcy petitions in which they scheduled as part of their property a house located in Jamestown, Rhode Island, valued at $90,000. At the time of the filing of the petition, the house was subject to the following encumbrances: first and second mortgages in the amount of $46,000, both held by the Savings Bank of Newport; a judgment lien for approximately $38,000 filed by Frank and Josephine Capalbo; and an attachment by Washington Trust Company (the Bank) in the amount of $100,000.

On May 16, 1980 the debtors filed a complaint seeking removal of the Capalbo and Washington Trust liens on two grounds: (1) that said liens were voidable to the extent that their $15,800 exemption was impaired under § 522(f) of the Bankruptcy Code; and (2) that these liens were voidable because they had been perfected within ninety days of the filing of the bankruptcy petition.

Shortly after the instant complaint was filed, the Trustee filed a notice of intended sale of the property in the amount of $79,000. The debtors do not object to the proposed sale, but suggest that the proceeds should be distributed as follows: to satisfy both mortgages on the property, to set aside $15,800 as exempt, and the remainder to be paid to the respective lienholders, or in the event that they are determined to be voidable, then to general creditors.

A hearing was held on June 24, 1980 on the debtor's complaint; summary judgment was granted as to Prayers for Relief (1) and (2) of the complaint, allowing the Suppas a $15,800 exemption in the property pursuant to § 522(f) of the Code and avoiding the Capalbo attachment to the extent it impaired this exemption. The question whether the liens of Capalbo and Washington Trust constitute preferences was left unresolved and is the subject of this Decision. The issue before this Court becomes further narrowed, since Washington Trust does not dispute that its lien on the subject property is voidable, as it clearly falls within the ninety-day preference period prescribed by § 547 of the Bankruptcy Code. However, the Bank questions the Capalbo lien on two grounds: First, although the Capalbos obtained their attachment and subsequent judgment outside the ninety-day preference period, execution was not levied until October 30, 1979, less than ninety days before the filing of the bankruptcy petition on January 22, 1980. The Bank argues that because, under Rhode Island law, execution on a judgment is necessary to establish a lien on real property, the Capalbos' lien was perfected within the ninety-day period and should be avoided as a preference. Alternatively, Washington Trust questions the extent of the Capalbos' interest in the property (assuming they have a valid lien), because their lien attached to only the interest of Salvatore Suppa in the property and not to that of his wife, Albina. Therefore, the Bank contends, at most the Capalbos' secured claim is limited to the interest of Salvatore Suppa.

With reference to the Bank's first contention, the pertinent provisions of the Bankruptcy Code are in § 547, which provides in part:

... the trustee may avoid any transfer of property of the debtor

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition . . . ;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.   11 U.S.C. § 547(b).

■ For such a transfer to be avoided, each and every element must be present, see In re Kelley, 3 B.R. 651, 6 B.C.D. 395 (Bkrtcy.E.D.Tenn.1980) (Kelley, B. J.); 4 Collier on Bankruptcy, § 547.01 at 54710, 11 (15th ed. 1980), and if the transferee can show that any element of § 547 is absent, the transfer may not be avoided.   The instant controversy involves element (4), whether the transfer was made within the 90-day period prior to the date of the filing of the bankruptcy petition.

The definition of a transfer under the Code is extensive, and includes "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with property or with an interest in property."   11 U.S.C. § 101(40). Under § 547(e)(2)(A) a transfer is deemed to occur (1) when it takes effect between the two parties, if it is perfected no more than 10 days after it takes effect, (2) at the time perfected, if perfected after 10 days, or (3) if not perfected before commencement of the case, immediately prior to the filing of the bankruptcy petition.   As to real estate, perfection is defined under § 547(e)(1)(A) as that point where a bona fide purchaser of the property from the debtor could not, under applicable law, acquire an interest of the transferee.

■ This inquiry begins with an examination of whether the attachment obtained by the Capalbos prior to the ninety-day preference period constitutes a transfer within the broad definition of the Code.

The Rhode Island Supreme Court has defined an attachment as a "lien or encumbrance upon the property attached.   When the judgment is rendered, it gives effect back to the attachment and relates back to the time when the attachment was made." Smart v. Burgess, 35 R.I. 149, 85 A. 742 (1913).   The later judgment does not create a new lien, but relates back to satisfy the earlier attachment by subjecting the attached property to satisfaction of the subsequent judgment.   See Everett v. Cutler Mills, 52 R.I. 330, 160 A. 924 (1932); Doyle v. Heath, 22 R.I. 213 (1900).   Thus an attachment, while not an absolute transfer of property rights, see Cull v. Vadnais, 406 A.2d 1241, 1244 (R.I.1979), does constitute a conditional "transfer" of a property interest subject to the later acquired judgment. See Bass v. Stodd, 357 F.2d 458, 464 (9th Cir. 1966).

A second issue deals with the time the attachment was perfected.   Under § 547, if the attachment was not perfected at the time it was recorded, it would be deemed (under the bona fide purchaser test of the Code) to have occurred immediately prior to the filing of the Suppas' bankruptcy petition.

According to the Rhode Island statute governing attachments, a writ of attachment can be recorded by leaving an attested copy of the writ with the town clerk or recorder of deeds in the city or town in which the property is located.   R.I.Gen. Laws § 10–5–9.   The recording of an instrument is considered to be constructive notice to all subsequent purchasers, as to the contents of the matter recorded.   R.I. Gen.Laws § 34–13–2.   Furthermore, any proceeds from the sale of encumbered property are distributed in order of priority of attachment or levy, with the party who first obtained his or her attachment entitled to full satisfaction of the debt before later attachments can be satisfied.   R.I.Gen.Laws § 9–26–30, § 9–26–31.

■ The Capalbos' attachment was recorded in the land records of Jamestown, Rhode Island, on March 13, 1979, more than ninety days before the Suppas filed their

bankruptcy petition. Under state law, any subsequent purchaser would be charged with constructive knowledge of, and would take subject to, the attachment. Therefore, the transfer, within the meaning of § 547, occurred on the date of recording of the attachment, at which time it was also perfected, and occurred more than ninety days prior to the Suppas' bankruptcy petition. Since an essential element of § 547 is lacking, this attachment cannot be avoided as a preference.

The second contention of Washington Trust is that if the Capalbos' lien is not voidable as a preference under § 547 of the Code, then that lien covers only the interest of Salvatore Suppa in the property. The writ attached only "the right, title, and interest of Salvatore Suppa", and not that of his spouse, Albina Suppa. Here the property was held by the debtors as tenants by the entirety, and although the interest of Salvatore Suppa could be attached, see Cull v. Vadnais, supra, at 1243, this attachment did not affect or reach the interest of his wife in the property. Under the former Bankruptcy Act, where a tenancy by the entirety existed, the trustee acquired no interest in such property where only one spouse filed. Under the Code, however, the interest of the debtor-spouse is considered property of the estate pursuant to § 541(a)(1). See 4 Collier on Bankruptcy, § 541.07 at 54136, 37 (15th ed. 1980).

I agree with the second contention of Washington Trust that the Capalbos are only secured to the extent of Salvatore's interest in the property. Section 506 of the Code provides that a lien claim is secured only to the extent of the value of the creditors' interest in such property, and that the balance of the debt is an unsecured claim.

For the foregoing reasons I conclude that:

(1) the lien of the Capalbos is not a preference under § 547 of the Bankruptcy Code; and

(2) the Capalbos have a security interest in one-half of the proceeds from the sale of the debtors' property remaining after payment of prior valid encumbrances and the debtors' statutory exemption.