In re George E. **GIBBONS**, Debtor.

**Bankruptcy No. 8100702.**

United States Bankruptcy Court, D. Rhode Island.

Sept. 13, 1985.

Thomas W. Kelley, Newport, R.I., for creditor, Donna Parkinson.

Kathleen Managhan, Corcoran, Peckham & Hayes, Newport, R.I., for debtor.

Jason Monzack, Halpert & Scoliard, Providence, R.I., for trustee.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

On remand to the Bankruptcy Court by Francis J. Boyle, Chief Judge of the District Court for the District of Rhode Island, for reconsideration in light of the Rhode

Island Supreme Court's advisory opinion, *In re Gibbons*, 459 A.2d 938 (R.I.1983), which discussed the effect of attachments against property owned as tenants by the entirety.

The specific issue before us is whether a debtor's interest in property held as tenants by the entirety is "exempt from process" under Rhode Island law, so that it qualifies as exempt property under 11 U.S.C. § 522(b)(2)(B) of the Bankruptcy Code. That section provides:

11 U.S.C. § 522. Exemptions.

. . . .

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate ...

. . . .

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety ... to the extent that such interest ... is exempt from process under applicable nonbankruptcy law.

In Rhode Island, creditors of one spouse may attach, but may not levy upon the debtor's interest in property held as tenants by the entirety.[1] *See Bloomfield v. Brown*, 67 R.I. 452, 25 A.2d 354 (1942). Therefore, in analyzing the exemption provisions of § 522(b)(2)(B) of the Bankruptcy Code as they apply in Rhode Island, the dispositive question is whether the ability to attach, without the additional right to levy upon the debtor's interest in such

property, constitutes "process" as that term is used in the Bankruptcy Code.

The debtor urges that it is *final* process, i.e., levy or execution, that Congress had in mind when it drafted § 522, and that "this Court should recognize the power to levy as being the instrumental process for [§ 522 exemption] purposes." Appellee's Additional Brief at 4.

On the other hand, the creditor argues that the original act of attachment constitutes process; that tenancy by the entirety property, which may be attached in Rhode Island, is not "exempt from process" under state law; and that, therefore, in Rhode Island, property owned as tenants by the entirety may not qualify as exempt property under federal bankruptcy law.[2]

## TRAVEL AND FACTS [2]

For more than four years this proceeding has been working its way through the First Circuit, Rhode Island federal, and state court systems, as follows. On August 31, 1981, George Gibbons filed a petition for relief under Chapter 7 of the Bankruptcy Code, listing Donna Parkinson as a creditor, for personal injuries sustained in a motor vehicle accident. The debtor's wife, Toni Gibbons, did not join in the petition. Pursuant to 11 U.S.C. § 522(b)(2)(B), the debtor claimed as exempt his interest in the marital home located at 9 Balsam Avenue, Newport, Rhode Island, which he and his wife own as tenants by the entirety. On February 5, 1982, we allowed the claimed exemption, over Parkinson's objection.[3]

---

**1.** Black's Law Dictionary defines tenancy by the entirety as "A tenancy which is created between husband and wife and by which together they hold title to the whole with right of survivorship so that, upon the death of either, other takes whole to exclusion of deceased's heirs." At common law, the husband was entitled to possession of his wife's realty during her lifetime and his interest could be sold on execution to satisfy his debts. Estates by the entirety originated as a means to protect the wife, whose legal existence was merged in that of the husband. After the Married Women's Act, the estate by the entirety is still predicated on the legal unity of husband and wife, but involving a merger of them as equals, not as unequals. *See* 41 Am.Jur.2d *Husband and Wife* § 55 (1968).

**2.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rules 7052 and 9014.

**3.** Parkinson filed a proof of claim for personal injuries sustained in a 1980 motor vehicle accident. Pursuant to § 522(1), and former Bankruptcy Rule 403(c) permitting objections by a party in interest, Parkinson objected to the debtor's claimed exemption of property held as tenants by the entirety, asserting that on liquidation such property is reachable by creditors. Under former Bankruptcy Rule 403, *"any* creditor may file objections [to the bankrupt's claimed exemptions]." Parkinson's rights depend, inter alia, on her establishing that the debtor has assets in excess of any exemptions to which he is entitled. Based on the debtor's

*See In re Gibbons,* 17 B.R. 373 (Bankr.D.R. I.1982), (*Gibbons I*). We held in that decision that an attaching creditor's *"inchoate and/or contingent right to levy"* was insufficient to deprive the debtor of the exemption under § 522(b)(2)(B):

> A creditor's right to levy *may* be extinguished if the spouses convey their interest to a third party, or if the debtor predeceases his/her spouse. This contingent/future right to levy does not constitute a sufficient interest to deprive a debtor of the § 522(b)(2)(B) exemption.

17 B.R. at 375.

In reaching that conclusion in 1982, and endeavoring to follow applicable state law,[4] we relied (in retrospect, unwisely), on implications contained in *Cull v. Vadnais,* the Rhode Island Supreme Court decision which suggests that a debtor "may" defeat an attachment by a joint conveyance of the property to a third party. *See Cull v. Vadnais,* 122 R.I. 249, 406 A.2d 1241 (1979).

Our holding was appealed on February 12, 1982 to the Bankruptcy Appellate Panel for the First Circuit. The Appellate Panel, preliminary to determining whether in Rhode Island an attachment constitutes "process" within the meaning of § 522(b)(2)(B); certified two questions to the Rhode Island Supreme Court:

> (1) Whether, in fact, after a valid attachment of the husband's interest in a tenancy by the entirety, that attachment can be defeated by a joint conveyance of the property.

> (2) Whether, in fact, after a valid attachment of the husband's interest in a tenancy by the entirety, that attachment can be defeated by a conveyance of the husband's interest to the wife.

*Certification,* No. 82–9012 (B.A.P. 1st Cir. July 12, 1982), (*Gibbons II*).

The Rhode Island Supreme Court responded on May 10, 1983, (*Gibbons III*), declaring that a valid attachment of the debtor's interest in tenancy by the entirety property cannot be defeated, either by a joint conveyance or by a conveyance of the debtor's interest to the non-debtor spouse. *In re Gibbons,* 459 A.2d 938 (1983).

Before the First Circuit Bankruptcy Appellate Panel was able to consider the bankruptcy issue in light of the advisory opinion (*Gibbons III*), it (the Bankruptcy Appellate Panel) became yet another casualty of the *Marathon* decision, and was judicially extinguished by the First Circuit Court of Appeals.[5] The matter was then transferred to the District Court for the District of Rhode Island, which, in turn, remanded the question to us for reconsideration, "in light of the advisory opinion of the Rhode Island Supreme Court, and in light of the purposes and objectives of the bankruptcy law." Order, No. 84–0113B (D.R.I. Dec. 21, 1984), (*Gibbons IV*).

## DISCUSSION

Unfortunately, the effect of the Federal Bankruptcy Code on Rhode Island law concerning property held in tenancy by the entirety is not yet fully clarified, even after the Rhode Island Supreme Court opinion in

---

sworn schedules, we are satisfied that the debtor's equity in his home exceeds $10,000. By stipulation filed on September 10, 1985, the parties have agreed that Parkinson's claim be allowed in the amount of $35,000.

**4.** Our obligation to follow local law extends not only to decisions on point, but to considered dicta as well, and the federal court should endeavor to give deference to the state rule on a point at issue using any reliable data or authoritative expression of the state law. *See Warren Bros. Co. v. Cardi Corp.,* 471 F.2d 1304 (1st Cir.1973); 1A J. Moore, *Moore's Federal Practice* ¶ 0.307[2] (2d ed.1985).

**5.** The United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) found unconstitutional the expansive jurisdiction conferred upon bankruptcy courts by the Bankruptcy Reform Act of 1978, which, among other things, created Appellate Panels of Bankruptcy Judges. Subsequently, the First Circuit Court of Appeals in *Commonwealth of Massachusetts v. Dartmouth House Nursing Home, Inc.,* 726 F.2d 26 (1984) held that bankruptcy appeals could no longer be heard by the Appellate Panel, but must, instead, be heard by the appropriate United States District court.

*Gibbons III.*[6] The uncertainty persists largely because Rhode Island's treatment of spousal ownership of real estate is unique even among jurisdictions which recognize the estate of tenancy by the entirety. Several states make *some part* of the tenancy subject to levy and execution by creditors of one spouse (*e.g.*, Massachusetts, New York, or New Jersey), while others do not permit creditors to take *any* action against entireties property (*e.g.*, Maryland, Ohio, Virginia).

Where levy and execution is permitted, the property is not considered to be exempt by the bankruptcy courts in those states. *See, e.g., In re Abdallah*, 39 B.R. 384 (Bankr.D.Mass.1984); *Jordan v. Borda (Matter of Jordan)*, 5 B.R. 59 (Bankr.D.N.J.1980); *In re Weiss*, 4 B.R. 327 (Bankr.S.D.N.Y.1980). In contrast, where entireties property is immune from levy and execution, it has been treated as exempt in bankruptcy. *See, e.g., In re Thomas*, 14 B.R. 423 (Bankr.N.D.Ohio 1981); *Bass v. Thacker (In re Thacker)*, 5 B.R. 592 (Bankr.W.D.Va.1980); *In re Ford*, 3 B.R. 559 (Bankr.D.Md.1980), *aff'd sub nom. Greenblatt v. Ford*, 638 F.2d 14 (4th Cir.1981). It is unique to Rhode Island, however, that an attachment of one spouse's interest in the entirety estate is permitted, but levy and sale of that interest is not. *See Cull v. Vadnais, supra; Bloomfield v. Brown, supra.* Because of this, the question whether property subject to attachment, but not levy, is exempt in bankruptcy is, we think, one of first impression.

In the bankruptcy context, the issue is important to both debtors and creditors, because debtors owning property as tenants by the entirety may receive widely disparate treatment under the Bankruptcy Code, depending upon the jurisdiction, and whether the debtor elects to claim state, as opposed to federal, exemptions. To illustrate, an examination of several Bankruptcy Code sections and their operative effect,

is useful. Under § 541, upon the filing of a bankruptcy petition, everything owned by the debtor, including his/her interest in property held as tenants by the entirety, automatically becomes "property of the estate," and includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* H.R. Rep.No. 595, 95th Cong., 2d Sess. 177 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. All of the debtor's interest in the marital home—one-half of the rents and profits, possession, and survivorship—is subject to administration by the trustee.

Also, the Bankruptcy Code permits the debtor to choose between two types of exemptions; the so-called "federal exemptions," § 522(b)(1), or applicable "state exemptions," § 522(b)(2). In most instances, regardless of whether federal or state exemptions are elected, the trustee may sell both the estate's interest and the interest of the non-debtor spouse in property held as tenants by the entirety, if:

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners ....

11 U.S.C. § 363(h).

In the event of such a sale by the trustee, one-half of the proceeds goes to the non-debtor spouse, and the other half remains in the estate for distribution to creditors, subject to the debtor's exemptions allowed by federal or state law. A debtor electing federal exemptions may claim as exempt $7,500 in value in the principal residence. 11 U.S.C. § 522(d)(1). For debtors choosing state exemptions,[7] the amount that may

---

6. *Gibbons III* responded to the state law questions certified, and specifically declined to address questions relating to federal bankruptcy law. *In re Gibbons, supra,* 459 A.2d at 941.

7. Thirty-seven states have "opted out" of the federal exemption provision of the Code: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Idaho, Il-

be claimed as a homestead exemption varies considerably among the states. Alaska allows a homestead exemption of $27,000; Arkansas, $800; Colorado, $20,000; Illinois, $7,500; Kentucky, $5,000; New York, $10,000; Oregon, $15,000; South Carolina, $5,000. *See* 7 *Collier on Bankruptcy, Exemptions* (15th ed. 1984). Rhode Island has no statutory exemption for homestead property. In most states, whether the debtor elects federal or state exemptions, there is a ceiling on the amount that may be claimed as exempt in property used as a residence.[8]

The result is dramatically different, however, if a debtor elects state exemptions in a jurisdiction where all entireties property is fully exempt from process under state law. In that situation, a debtor may put beyond the reach of creditors *all* real property held as tenants by the entirety, regardless of its value or its use. *See* 11 U.S.C. § 522(b)(2)(B). In those states, if the debtor elects state exemptions (and, if there is equity, who wouldn't?), none of the entireties property is available for distribution to creditors. Since those exemptions are not limited to property used as a residence, but apply as well to *all* real property held in that form of spousal ownership, debtors may retain assets far in excess of what is necessary for a place to live. Instead of the fresh start contemplated by the drafters of the Bankruptcy Code, the debtor is given a big head start, vis-a-vis creditors. This potential for creditor abuse

becomes even more ominous in light of decisions which permit debtors, immediately prior to seeking relief in the bankruptcy court, to convert non-exempt property into exempt property. *See Schmidt v. White (In re White)*, 28 B.R. 240, 10 B.C.D. 519 (Bankr.E.D.Va.1983); *First National Bank of Beresford v. Johnson (In re Johnson)*, 8 B.R. 650 (Bankr.D.S.D.1981). *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977) ("the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition"). Although unheeded by Congress, the concerns expressed in the Bankruptcy Commission Report, that "in states where there are excessive exemptions, creditors have difficulty understanding a system that allows a debtor to retain property of a value of several hundred thousand dollars, while at the same time obtaining a discharge which precludes recovery of the creditors' claims," are concerns that have come home to roost, in many cases. *Report of the Commission on Bankruptcy Laws of the United States*, H.R.Doc. 93–137, 93rd Cong., 1st Sess. Pt. 1 at 171 (1973).

On a more encouraging note, not all jurisdictions recognize the entirety form of ownership,[9] and that estate is increasingly viewed as a common law anachronism, inconsistent with today's wife's right to own and control property, independent from her husband. *See* Craig, *An Analysis of Estates by the Entirety in Bankruptcy*, 48

---

linois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Missouri, Montana, Nebraska, Nevada, New Hampshire, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Utah, Virginia, West Virginia, and Wyoming. While California has formally opted out pursuant to 11 U.S.C. § 522(b), it still permits debtors, in certain situations, to elect federal exemptions as a matter of state law. 3 *Collier on Bankruptcy* § 522.02 at 522–12 (15th ed. 1984).

8. Texas has two homestead exemptions, depending on whether the homestead is rural or urban. A rural homestead exemption consists of 200 acres for a family or 100 acres for an individual. An urban homestead consists of one acre. The proceeds of the voluntary sale of a homestead

are exempt for only six months. *See* 7 *Collier on Bankruptcy, Exemptions*, (15th ed.1984).

9. Rhode Island is one of 25 jurisdictions which still recognize some form of tenancy by the entirety. These jurisdictions are Alaska, Arkansas, Delaware, District of Columbia, Florida, Hawaii, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Mississippi, Missouri, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Vermont, Virgin Islands, Virginia, and Wyoming. *See* Craig, *An Analysis of Estates by the Entirety in Bankruptcy*, 48 AM Bankr.L.J., 255, 295–301 (1974). *See also* Resnick & Finkel, *A Tenancy by the Entirety in Liquidation under the Bankruptcy Code: When a House may not be a Home*, 86 Comm.L.J., 286 (1981).

AM Bankr.L.J., 255, 258 (1974). Also, in states which do permit such ownership, not all treat the property as "exempt from process." [10] Only in those states where such property is fully "exempt from process" does the election of § 522(b)(2)(B) offer the debtor potentially extraordinary advantage, at creditors' expense. Therefore, the dispositive phrase "exempt from process," which is not defined by the Bankruptcy Code or in the legislative history,[11] assumes considerable significance in this case, and for Rhode Island debtors and creditors in general.

In its ordinary legal context, the term "process" is fairly all-encompassing. Black's Law Dictionary defines "process" as "any means used by a court to acquire or exercise its jurisdiction over a person or over specific property." BLACK'S LAW DICTIONARY, 1084 (rev. 5th ed.1979). The term "final process" is defined as the "last process in an action; i.e. 'process' issued to enforce execution of judgment." *Id.* at 1085.

█ Although the debtor urges us to conclude otherwise, in the absence of legislative history to shed light on its intended usage, we will not infer that under § 522(b)(2)(B), the phrase "exempt from process" was intended, but for imprecise drafting, to be read as "exempt from [final] process." Also, we regard the historic Rhode Island policy barring creditors from executing against property held as tenants by the entirety as designed, not to permanently insulate that asset from the reach of creditors, but to preserve the residence as long as the tenancy remains intact. *See* Resnick & Finkel, *A Tenant by the Entirety in Liquidation under the Bankruptcy Code: When a House may not be a Home,* 86 Comm.L.J. 286, 287 (1981) (discussing the treatment of the tenants by the entireties estate in New York). *See also In re*

*Weiss, supra.* In Rhode Island, an attachment clearly impinges upon the debtor's property interest, even though the right to possession is protected, and as the Rhode Island Supreme Court stated long ago, an attachment "creates a lien on the property attached which is held in the custody of the law to satisfy such judgment or decree as the plaintiff may obtain." *Everett v. Cutler Mills,* 52 R.I. 330, 333, 160 A. 924, 925 (1932). If husband and wife jointly convey to a third party, the tenancy by the entirety estate is extinguished, but the attachment remains an encumbrance on the property, which may then be levied upon. Likewise, if the non-debtor spouse predeceases the debtor, the debtor's interest in the property immediately becomes subject to levy and execution. *See In re Gibbons,* 459 A.2d 938 (1983), (*Gibbons III*).

The Rhode Island Supreme Court in *Gibbons III* stated clearly that an attachment against one spouse's interest impairs the transferability of real estate held as tenants by the entirety:

A debtor who has had his property attached cannot defeat that attachment by conveying the property to a third party. Based on fundamental priority rules, the result of such a conveyance is that the third party takes subject to the attachment. In the present case the property attached is the husband's interest in a tenancy by the entirety. However, we feel that this fact does not change the applicability of the rule just enunciated, namely, that an attachment is not defeated by a conveyance of the property. Therefore, in response to the first question certified, we decide that the attachment is not defeated as the third-party grantee takes subject to the attachment lien. In response to the second question certified, we again decide that the attach-

---

**10.** The following states still retain the tenancy by the entirety form of ownership, but do not treat such property as fully exempt from process: Alaska, Arkansas, Kentucky, Massachusetts, New Jersey, New York, Oregon, and Tennessee. *See 7 Collier on Bankruptcy, Exemptions* (15th ed.1984).

**11.** The legislative history reiterates the statutory language. H.R.Rep. 595, 95th Cong., 1st Sess. 360 (1977).

ment is not defeated as the wife takes subject to the attachment lien.

*In re Gibbons, supra* 459 A.2d at 939–40.

If the estate of tenancy by the entirety were intended to be fully "exempt from process"[12] in Rhode Island, we would then expect that here, as in Maryland, Ohio, and Virginia, no part of the estate would be subject to attachment by the creditors of only one spouse. In Rhode Island, however, attachment liens do confer upon attaching creditors substantial rights against the property, and it appears to be this state's current policy to safeguard creditors' interests in the equity in such property. In *Gibbons III,* the Rhode Island Supreme Court, sua sponte, resolved in favor of creditors the question whether an attachment would be discharged if execution were not levied within one year after the date of judgment.[13] There the Court noted:

> It may be argued that the attachment will be discharged unless the execution is stayed or the nondebtor spouse dies within one year after the date of the judgment. To remedy this anticipated problem, we hold that in cases of attachment of an interest in a tenancy by the entirety, levy and execution are in effect stayed by operation of law. Therefore, the one-year period will not begin to run and the legal inhibition upon levy and execution is lifted, namely, upon the death of the nondebtor spouse.

*Id.* at 940.

In light of this recent pronouncement by the Rhode Island Supreme Court, we do not regard as merely illusory the legal fact of life that in this state an attachment places real and substantial restraints upon a debtor's interest in property held by the entirety.

Also, the practical and legal impact of such an attachment in Rhode Island more closely resembles that in jurisdictions where levy is permitted (and where there is no exemption under § 522(b)(2)(B) ), than in states where levy is not allowed. As in states where levy is permitted, a Rhode Island debtor whose interest has been attached retains the right to occupy the premises, more by virtue of his/her marital status than because of some unidentifiable property interest. *Cf. In re Abdallah, supra; In re Weiss, supra; Matter of Jordan, supra.* We agree with the reasoning of the Bankruptcy Court for the Southern District of New York in rejecting a debtor's argument that he retained a valuable property interest, i.e., the right to possession, which cannot be reached by creditors and which should be exempt under Code § 522(b)(2)(B). *In re Weiss, supra* at 330. As Judge Schwartzberg responded, "[t]his proposition is unsupportable" because "[at] most, he is a guest or invitee of his wife [non-debtor] with whom he lives. This status is not an interest in property ... capable of supporting an exemption under Code § 522(b)(2)(B)." *Id.* at 330–331. We find little difference in the effect of a levy in New York, and the effect of an attachment in Rhode Island. The policy in both jurisdictions appears to be aimed at allowing

---

**12.** With respect to the meaning of "process" in the context of the bankruptcy phrase "exempt from process," we note that in Rhode Island an attachment is and traditionally has been regarded as a form of process sufficient to impair a debtor's interest in property. There is a Rhode Island statute which exempts specific property from attachment, R.I.GEN.LAWS § 9–26–4. Among the fourteen categories of items designated as "property exempt from attachment" are such basics as "necessary wearing apparel," "working tools of a debtor," and "household furniture," and a number of archaic holdovers such as "[o]ne (1) hog and one (1) pig of a housekeeper [sic]." Tenancy by the entireties property is not included among this list.

**13.** R.I.GEN.LAWS § 9–25–23 (1982):

9–25–23. Execution against attached property.—Whenever final judgment or decree shall be rendered for the plaintiff in any action or suit in which a writ was served attaching real estate, or goods and chattels, or stock or shares in any incorporated company, the execution issued on such judgment or decree shall be levied on the property so attached, as soon as may be; but if execution shall not be so levied within one (1) year from the day of entry of judgment or decree, the property attached shall be discharged of such attachment. In computing the periods of time provided in this section, time during which execution is stayed shall not be included.

868

creditors to reach the equity in the property, subject *only* to the debtor's right to interim possession or occupancy during the tenure of the marriage. Until Rhode Island legislators or courts go further than they have in insulating tenancy by the entirety property from the reach of creditors (indeed, it appears the opposite direction is currently being taken), we are not inclined to hold that Rhode Island law shields a debtor's interest from "process" sufficiently to enable entireties estate property to qualify as exempt under § 522(b)(2)(B) of the Bankruptcy Code.

█ We do not imply or suggest, incidentally, that this decision should have any effect or impact on the treatment of property held as tenants by the entirety on the State side of things. We in no way attempt to alter or influence state law which prevents creditors of one spouse from levying upon his/her interest in entireties property, and this decision is expressly limited to the context of exemptions under federal bankruptcy law. In applying § 522(b)(2)(B) of the Bankruptcy Code here, we have narrowly concluded that property subject to attachment in Rhode Island is not "exempt from process," and that it therefore does not qualify as exempt property under federal bankruptcy law. Accordingly, under § 363(h) (*see supra* p. 864), otherwise non-exempt entireties property may be administered by the bankruptcy trustee for the benefit of creditors. We also hold that a Rhode Island debtor electing state exemptions may not avoid judicial liens against entireties property under § 522(f)(1), because such liens do not impair any exemption to which he/she is entitled under state law.[14]

On reconsideration, therefore, with the benefit of the clarification provided by the Rhode Island Supreme Court advisory opinion in *Gibbons III*, and with probably more careful thought than it was given the first time around, we reverse our prior holding

and conclude that the objection to the claimed exemption should be sustained.

Enter judgment accordingly.

---

14. Of course, under § 522(b)(1), dealing with federal, as opposed to state exemptions, a debt-

or may exempt $7,500 in property used as a residence as provided for in § 522(d)(1).